**In the Interest of G.S., M.S. and J.S., Minors.**

**No. 52085.**

Missouri Court of Appeals, Eastern District, Northern Division.

June 16, 1987.

Robert L. Mark, Hannibal, for appellants.

Branson L. Wood, III, Thomas P. Redington, Hannibal, for respondent.

CRIST, Judge.

This is a consolidation of appeals of judgments terminating the parental rights of appellants (father and mother) to three of their minor children. We affirm.

■ Father and mother assert the unconstitutional application of §§ 211.351.1 and 211.447.1, RSMo 1986 denied them a right to trial before a fair and impartial judge. *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

Section 211.351.1 states in part:

A juvenile court shall appoint a juvenile officer ... to serve under the direction of the court....

Section 211.447.1 provides for the filing by the juvenile officer of a petition to terminate parental rights. Should he decide not to do so, an informant seeking such proceedings may present the matter to the juvenile judge who can order the juvenile

officer to file a petition to terminate parental rights or to investigate further.

Father and mother claim the statutory scheme which allows the juvenile judge to hire and supervise the juvenile officer, even to the extent of giving to the juvenile judge the prosecutorial discretion of determining whether to file a petition to terminate parental rights, denies father and mother a right to a fair and impartial fact finder. We disagree.

This case originated in the Juvenile Court of Marion County at Hannibal, Missouri, which is a part of the Tenth Judicial Circuit for the State of Missouri. The Tenth Judicial Circuit encompasses Ralls County, Monroe County and Marion County. There is only one circuit judge in this circuit, the Honorable Ronald R. McKenzie. As the sole circuit judge, he is also the presiding judge for the Tenth Judicial Circuit. He is the judge who hired the juvenile officer of the circuit. He is the judge who was involved in supervision of the juvenile officer in the case at bar.

On January 14, 1982, G.S., M.S. and J.S. were made wards of the Marion County Circuit Court, Juvenile Division, by order of the Hon. Ronald R. McKenzie, Presiding Judge.

On June 9, 1983, upon recommendation of the Division of Family Services and the juvenile officer, Associate Circuit Judge James L. Lemon entered a dispositional order directing the juvenile officer to file a petition for termination of parental rights with reference to the children.

On July 11, 1983, wardship of the three children was reviewed by Presiding Judge McKenzie, and an order was entered continuing wardship. On January 10, 1984, wardship of the three children was again reviewed and continued by Judge McKenzie. A similar review and order was entered on June 21, 1984.

On July 24, 1984, another review was held before Judge Lemon. It was the recommendation of the juvenile officer and the Division of Family Services that termination proceedings be initiated. The court entered an order continuing foster care placement. With respect to J.S., Judge Lemon ordered the juvenile officer to "set a full hearing to consider T.P.R. [Termination of Parental Rights]." On August 10, 1984, the County Director of the Missouri Division of Family Services directed a Termination of Parental Rights Survey to Presiding Judge McKenzie outlining the history of the case and recommending termination of parental rights with respect to all three children.

On September 28, 1984, juvenile officer Doty and Presiding Judge McKenzie met ex parte to discuss the termination recommendation. It was concluded there was insufficient evidence to sustain petitions for termination.

The cases were reviewed by Judge McKenzie on December 21, 1984, and June 5, 1985, and orders were entered continuing wardship.

On June 7, 1985, juvenile officer Doty filed Petitions for Termination of Parental Rights. The grounds for termination in each were abandonment for a period of six months or longer, and neglect and failure to rectify, on a continuing basis, the conditions giving rise to wardship. Trial on the petitions was held on April 21, 1986, and thereafter parental rights of mother and father were terminated. The trial was held before Judge Lemon after Judge McKenzie had been disqualified by mother and father.

The mere fact that Judges Lemon and McKenzie had been involved in the preliminary stages of the juvenile proceeding did not ipso facto disqualify Judge Lemon to preside at the termination proceeding. A trial judge's limited supervisory control over a case does not disqualify him from presiding at subsequent hearings. In a criminal case involving revocation of probation, this court upheld the authority of the trial judge who had exercised supervisory authority over a case to preside at the subsequent proceedings resulting in revocation of probation and incarceration of the defendant. *Moore v. Stamps*, 507 S.W.2d 939, 948 [3] (Mo.App.1974). *See CLP v. Pate*, 673 S.W.2d 18 (Mo.banc 1984).

In their objections at trial and their motion for a new trial, mother and father

objected to the statutory scheme which places the juvenile officer, the only person who can initiate termination proceedings, under the supervision of the court and allows the court to order the initiation of termination proceedings. There was no objection that Judge Lemon had any personal bias. The sections in controversy were modeled after similar provisions enacted in other jurisdictions. Moreover, there is nothing in this record to indicate mother and father received unfair treatment at the hands of Judges Lemon and/or McKenzie. *See Bradley v. McNeill*, 709 S.W.2d 153, 155 (Mo.App.1986).

■ Finally, mother and father assert there was not clear, convincing and cogent evidence to support the order terminating their parental rights.

The evidence established a year's abandonment. Mother and father had moved from Hannibal to Canton, Missouri, where they resided for a period of six months. During this time they did not notify any of the authorities where they were living. Later, they moved to Arkansas and finally returned to Missouri. They did not contact any of the authorities and had absolutely no contact with the children during the period from August of 1984 until August of 1985. Mother and father did not even inquire to find out how the children were. The statute only requires an abandonment for six months. § 211.447.2(1)(b), RSMo 1986; *In the Interest of D.R.W.*, 663 S.W.2d 426 (Mo.App.1983).

Judgment affirmed.

DOWD, P.J., and SIMEONE, Senior Judge, concur.